Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| ISRAEL KOPEL AMSTER Y OTROS<br><br>MARCELINO BELLOSTA VARADY Y OTROS<br><br>RECURRIDOS<br><br>V.<br><br>**ALPHA DEMOLITIONS INC. ET. ALS.**<br><br>PETICIONARIOS | KLCE202401149<br><br>Consolidado con | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020CV01468<br><br>Sobre: Daños y Perjuicios |
| ISRAEL KOPEL AMSTER Y OTROS<br><br>MARCELINO BELLOSTA VARADY Y OTROS<br><br>RECURRIDOS<br><br>V.<br><br>**BAYSIDE BUILDERS, LLC Y SU ASEGURADORA, LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY INTERNATIONAL UNDERWRITERS**<br><br>PETICIONARIOS | KLCE202401181 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020CV01468<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de noviembre de 2024.

---

[1] Véase Orden Administrativa OATA-2024-042.

Número Identificador
RES2024_____

## I.

El 23 de octubre de 2024, Alpha Demolitions, Inc. (Alpha Demolitions), el ingeniero Antonio Enrique Medina Eliza (señor Medina Eliza), la señora Teresa Margarita Fernández y la Sociedad Legal de Gananciales compuesta por ambos, y MAPFRE PRAICO Insurance Company (MAPFRE) como aseguradora de Alpha Demolitions (en conjunto, peticionarios), presentaron una *Petición de Certiorari* en la que solicitaron que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) el 9 de agosto de 2024, notificada y archivada digitalmente en autos el 12 de agosto de 2024.[2] En el dictamen, el TPI declaró No Ha Lugar una *Moción de sentencia sumaria parcial* promovida por los peticionarios en el pleito sobre daños y perjuicios que lleva en su contra la Sucesión de Israel Kopel Amster (parte recurrida). Ese recurso obtuvo el alfanumérico KLCE202401149.

El 24 de octubre de 2024, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 1 de noviembre de 2024 para exponer su posición sobre los méritos del recurso.

Por otro lado, el 25 de octubre de 2024, Bayside Builders, LLC, Liberty Mutual Insurance Company y Liberty International Underwriters (en conjunto, Bayside) radicaron otra *Petición de Certiorari* en la que solicitaron que revoquemos la misma *Resolución* emitida por el TPI en cuanto rechazó desestimar el pleito respecto a estas partes. A ese recurso se le asignó el alfanumérico KLCE202401181.

El 28 de octubre de 2024, la parte recurrida, Israel Kopel Amster sustituido por los miembros de su sucesión, presentó una *Solicitud de orden de consolidación de recursos de Certiorari* en la

---

[2] Apéndice del recurso KLCE202401149, Anejo VII, págs. 1557-1589.

que solicitó que el KLCE202401149 (caso matriz) fuera consolidado con el KLCE202401181 por tratar sobre la misma *Resolución* recurrida.

El 30 de octubre de 2024, emitimos una *Resolución* en la que ordenamos la consolidación de ambos casos y le concedimos a la parte recurrida un término final hasta el 7 de noviembre de 2024 para exponer su posición sobre los méritos de los recursos consolidados.

El 7 de noviembre de 2024, la parte recurrida radicó una *Oposición a la expedición de autos de Certiorari consolidados* en la que solicitó que deneguemos la expedición de los autos solicitados.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionados los recursos consolidados de epígrafe y, en adelante, pormenorizamos los hechos procesales relevantes a su atención.

## II.

El caso de marras tiene su génesis el 7 de abril de 2020 cuando el señor Israel Kopel Ballester y los demás miembros de la parte recurrida presentaron ante el TPI una *Demanda* en reclamo de daños y perjuicios por el sufrimiento y la muerte de la señora Josefina Manuela Ballester Cabrera (señora Ballester Cabrera), esposa del señor Kopel Ballester y madre de los demás miembros de la parte recurrida.[3] En la reclamación, se alegó que, entre otros, el señor Medina Eliza, Alpha Demolitions y sus respectivas aseguradoras eran responsables por la muerte de la señora Ballester Cabrera tras un accidente de tránsito ocurrido en Guaynabo.

Después de presentado, este caso ha tenido un extenso trámite procesal, demostrado por las más de 730 entradas que ostenta el expediente digital en el SUMAC, además de varias

---

[3] Entrada Núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

comparecencias ante esta Curia. Ahora bien, para atender los recursos consolidados de epígrafe resulta innecesario consignar todo ese trámite, excepto en lo que pormenorizamos a continuación.

Como parte del trámite del pleito, la parte recurrida incluyó como partes demandadas a Bayside y su aseguradora, como parte de su tercera demanda enmendada.[4] A esos efectos, le imputó haberse involucrado en los trabajos de la obra que le causó los daños reclamados a la parte recurrida.

El 30 de octubre de 2023, los peticionarios, en el caso matriz, radicaron una *Moción de sentencia sumaria parcial* en la que argumentaron que, en cuanto a ellos, el pleito se debía desestimar con perjuicio.[5] Según esbozaron, la parte recurrida no contaba con prueba para establecer la negligencia u omisión que les imputaba, ni para demostrar su relación con los hechos del caso. Asimismo, plantearon que el señor Marcelino Bellosta Varady (señor Bellosta Varady), dueño de la Propiedad #20, contrató a Bayside como contratista general del proyecto de demolición; Bayside subcontrató a Alpha Demolitions para realizar los trabajos de demolición; Alpha Demolitions contrató a Sea Shore Environmental, a través del señor Jesús Burgos Ayala (señor Burgos Ayala), para la remoción y acarreo de escombros; el señor Burgos Ayala contrató los servicios de acarreo de First Pick Trucks and Tires, LLC, dueña del camión involucrado en el accidente. Dada esa cadena de contratación y subcontratación, adujeron que no es posible adjudicarle responsabilidad a Alpha Demolitions por actos imprevistos del chofer del camión.

Para sostener su posición, incluyeron como anejos una carta de aceptación de propuesta del contrato entre Bayside y Alpha Demolitions; una orden de compra de Alpha Demolitions a Sea

---

[4] Apéndice del KLCE202401149, Anejo I, págs. 1-30.
[5] Íd., Anejo 3, págs. 49-134.

Shore Environmental; el *Informe* de la Policía de Puerto Rico sobre el accidente; la *Contestación a primer pliego de interrogatiorios* de los peticionarios; extractos de deposiciones tomadas al señor Medina Eliza y al perito de la parte recurrida; la carta de aceptación del contrato entre el señor Bellosta Varady y Bayside; y el *Permiso para demolición de estructuras* de la obra, entre otros documentos.

El 30 de octubre de 2023, Bayside presentó una *Moción de sentencia sumaria parcial* en la que solicitó al TPI que desestimara la causa en su contra por insuficiencia de la prueba.[6] A esos efectos, arguyó que la parte recurrida carecía de evidencia para demostrar el nexo causal entre los daños alegados y la responsabilidad imputada a Bayside. En esencia, argumentó que: no cometió ningún acto u omisión mediando culpa o negligencia; el perito de la parte recurrida no posee evidencia relacionada a Bayside; y, al no haber responsabilidad del asegurado, su aseguradora tampoco respondía.

En aras de apoyar su solicitud, incluyó los extractos de varias deposiciones tomadas sobre el proyecto; la *Carta de adjudicación* emitida por el señor Bellosta Varady asignando el proyecto a Bayside; una cotización y un desglose de Bayside sobre los costos del proyecto de demolición, entre otros documentos.

El 28 de diciembre de 2023, la parte recurrida radicó una *Oposición a moción de sentencia sumaria de Alpha Demolitions Inc, Ing, Antonio Enrique Medina Eliza, Teresa Margarita Fernández, la Sociedad Legal de Gananciales y MAPFRE PRAICO Insurance Company* en la que solicitó al TPI que declarara No Ha Lugar la solicitud de sentencia sumaria solicitada.[7] Según enfatizó, los peticionarios incurrieron en negligencia u omisión al involucrarse en los trabajos de demolición, remoción y acarreo de escombros,

---

[6] Apéndice del KLCE202401181, págs. 214-411.
[7] Apéndice del KLCE202401149, Anejo IV, págs. 135-1524.

actividades inherentemente peligrosas y no tuvieron la prudencia de tomar medidas apropiadas de precaución.

Ese mismo día, la parte recurrida presentó una *Oposición a moción de sentencia sumaria de Bayside Builders LLC/Liberty Mutual Insurance Company y Liberty International Underwriters* en la que se opuso a que el TPI dictara sentencia sumaria desestimando la acción en contra de Bayside.[8] En esencia, adujo que Bayside debió constatar perfectamente la peligrosidad para el tráfico y los peatones por las actividades de demolición para las que fue contratada. Por ello, alegó que la omisión de Bayside de no exigir a la compañía subcontratada que tomara medidas de seguridad le hacía responsable por los daños resultantes.

El 12 de enero de 2024, los peticionarios radicaron una *Réplica a la oposición de sentencia sumaria* en la que reiteraron su solicitud al TPI para que dictara una sentencia sumaria desestimatoria.[9] En esa ocasión, plantearon que los hechos incontrovertidos demostraban que a Alpha Demolitions le era imposible prevenir los actos imprevistos que llevaron a la muerte de la señora Ballester Cabrera. Asimismo, esbozaron que la alegación de la parte recurrida de responsabilidad de los peticionarios constituyó una mera especulación, sin prueba o fundamento alguno que estableciera que sus acciones fueron la causa próxima y adecuada del accidente.

Ese mismo día, Bayside presentó una *Réplica a "Oposición a moción de sentencia sumaria de Bayside Builders LLC/Liberty Mutual Insurance Company y Liberty International Underwriters* en la que recalcó que la parte recurrida no demostró la existencia de una controversia real sobre los hechos materiales que impidiera

---

[8] Apéndice del KLCE202401181, págs. 2685-2811.
[9] Apéndice del KLCE202401149, Anejo 5, págs. 1525-1548.

dictar sentencia sumaria desestimatoria.[10] Todavía más, argumentó que ninguno de los hechos fue controvertido en cumplimiento de la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b).

El 30 de enero de 2024, la parte recurrida radicó una *Dúplica a réplica a oposición a moción de sentencia sumaria de Alpha Demolitions Inc et als* en la que reiteró su posición sobre la solicitud de sentencia sumaria de los peticionarios.[11]

Ese mismo día, la parte recurrida presentó una *Dúplica a réplica a oposición a moción de sentencia sumaria de Bayside Builders LLC/Liberty Mutual Insurance Company y Liberty International Underwriters* en la que recalcó, entre otras cosas, que a Bayside se le imputaba su propia negligencia por omitir tomar medidas de seguridad para evitar el accidente que llevó a la muerte de la señora Ballester Cabrera.[12]

El 9 de agosto de 2024, el TPI emitió la *Resolución* recurrida en la que declaró No Ha Lugar las respectivas solicitudes de sentencia sumaria de los peticionarios y de Bayside.[13] A su juicio, carecía de evidencia para determinar: (1) el rol que tuvo Bayside en la realización de la obra de demolición y acarreo de escombros; (2) si Alpha Demolitions actuó de forma prudente y razonable al delegar el acarreo de escombros y a quién lo hizo; (3) sobre la delegación de la realización de obras de Bayside a Alpha Demolitions y de Alpha Demolitions al señor Burgos Ayala o Sea Shore Environmental, LLC; y (4) si la obra conllevó riesgos peculiares que ameritaban la implementación de medidas de seguridad especiales. En el dictamen, formuló los siguientes hechos incontrovertidos:

1. El Sr. Marcelino Bellosta Varady compró la propiedad residencial ubicada en la Calle Nogal #2 de la Urbanización San Patricio (Propiedad #2), en el año 2016.

---

[10] Apéndice del KLCE202401181, págs. 3418-3433.
[11] Apéndice del KLCE202401149, Anejo 6, págs. 1549 -1556.
[12] Apéndice del KLCE202401181, págs. 3481-3487.
[13] Apéndice del KLCE202401149, Anejo VII, págs. 1557-1589.

2. El Sr. Marcelino Bellosta Varady compró la propiedad residencial #20 en la Calle Manuel Rivera Ferrer de la Urbanización San Patricio (Propiedad #20) en el año 2018

3. Las propiedades residenciales #2 y #20 son colindantes.

4. El 18 de septiembre de 2018, Bayside Builders, a través del Ing. Riefkohl, le hizo una propuesta por escrito al Sr. Marcelino Bellosta Varady para cotizar los trabajos de demolición. Esta gestión incluía el estudio ambiental, permisos de demolición, pólizas de responsabilidad pública y Corporación del Fondo del Seguro del Estado, supervisión, personal, equipos, combustible; demolición y disposición de escombros, entre otros.

5. El 26 de octubre de 2018, el Sr. Marcelino Bellosta Varady aceptó, mediante carta, la propuesta de Bayside Builders para los trabajos de demolición del proyecto. Los trabajos acordados incluyeron los servicios de fabricación, instalación y uso de cualquier mecanismo de seguridad requerido por OSHA.

6. La carta de adjudicación del proyecto entre el Sr. Bellosta y Bayside Builders estableció que la duración del proyecto sería de cuarenta y cinco (45) días a partir de obtener el permiso de demolición.

7. Para la fecha de los hechos del caso de epígrafe, el Sr. Ernesto Riefkohl Miranda era el presidente de Bayside Builders.

8. Conforme a la Solicitud de Permiso de Demolición, la descripción del trabajo de demolición fue la siguiente:
   > Demolición de estructura de una planta y un sótano de aproximadamente 4,750.00 pies cuadrados en hormigón con marquesina para dos automóviles.

9. El *Informe de Accidente de Tránsito de la Policía de Puerto Rico* indicó que, el 30 de abril de 2019, el conductor del camión marca Kenworth 999, Tablilla PP-8005 de 1994, inició la marcha en retroceso y no se percató del peatón, la Sra. Josefina Ballester Cabrera, de 67 años y la arroyó con la goma trasera. Las heridas recibidas por la Sra. Josefina Ballester Cabrera le causaron la muerte.

10. Según el Informe de Accidente de Tránsito de la Policía de Puerto Rico, el 30 de abril de 2019, Luis Urbano Burgos Echevarría conducía el camión, marca Kenworth 999, Tablilla PP-8005 del año 1994.

11. La Urbanización San Patricio cuenta con control de acceso, que ubica al inicio del punto Norte de la Calle Principal.

12. La Urbanización San Patricio no cuenta con aceras.

13. Para la fecha de los hechos del caso de epígrafe, el Sr. Marcelino Bellosta Varady tenía una póliza de responsabilidad pública con Triple S Propiedad, con número PP-41108497-0003-0000. Dicha póliza tenía un límite de $1,000,000.

14. A preguntas sobre la proximidad del proyecto de demolición en relación con su residencia, en la Calle Nogal, el Sr. Bellosta Varady testificó lo siguiente:
   > [m]i habitación da hacia ese lindero del solar de la calle Nogal. Había una verja, o sea, muchas matas y quizás 50 metros de donde estaba mi almohada estaba la demolición. O sea, que yo le pasaba por el lado y en las mañanas escuchaba las máquinas, o sea me levantaban las máquinas.

15. Bayside Builders, contratista general de la obra de demolición, le adjudicó la obra de demolición y acarreo de escombros en la Propiedad #20 a Alpha Demolitions, Inc.

16. Alpha Demolitions, Inc. es una corporación autorizada por el Departamento de Estado del Estado Libre Asociado de Puerto Rico, con dirección física en Carretera 685 km 1.5 Bajuras Ward, Manatí, PR, 00674 y la siguiente dirección postal: PMB 309 405 Ave. Esmeralda Ste. 102, Guaynabo, PR, 00969-4457.

17. Alpha Demolitions, Inc. es una corporación dedicada a demoliciones de estructuras, interiores o estructuras completas.

18. Para la fecha de los hechos, Mapfre Praico Insurance Company tenía expedida la póliza número 54-CP-200010521-2, a favor de Alpha Demolitions, Inc.

19. El Ing. Antonio Medina Eliza, presidente y dueño de Alpha Demolitions, Inc., tiene experiencia y preparación en contratación de demoliciones desde el año 1988 al presente.

20. El Sr. Sebastián Colberg, en representación de Bayside Builders, aceptó la propuesta de Alpha para los trabajos de demolición del proyecto, el 26 de octubre de 2018, mediante una carta.

21. Los compromisos suscritos por Alpha incluyeron la fabricación, instalación y cualquier mecanismo de seguridad requerido por OSHA y necesario en el proyecto para la protección de sus empleados.

22. El 8 de enero de 2019, el Sr. Marcelino Bellosta Varady autorizó, mediante carta, a Alpha a tramitar los permisos de demolición correspondientes para proceder con los trabajos y servicios contratados.

23. El Ing. Medina es el dueño de Cantera Roca Dura, Inc., empresa que recibió el material producto de la obra de demolición en la Propiedad #20 de la Urbanización San Patricio.

24. La remoción de los escombros producto de la obra de demolición conllevó más de 31 viajes de camiones remolcadores a la Cantera Roca Dura.

25. Según la Solicitud de Permiso de Demolición, el Ing. Medina Eliza fue el inspector de la obra de demolición, según el trámite del permiso de demolición de la estructura de la Propiedad #20.

26. El 8 de abril de 2019, el Municipio de Guaynabo expidió el Permiso para Demolición de Estructuras, número 2019-00207-DTC, correspondiente a la Propiedad #20, perteneciente al Sr. Marcelino Bellosta Varady.

27. El Permiso para Demolición de Estructuras fue gestionado por Alpha Demolitions, Inc., según pactado.

28. La Condición Especial Número 6 del Permiso para Demolición de Estructuras, lee de la siguiente manera:
    > [d]eberá coordinar con el Municipio de Guaynabo y con la Policía de Puerto Rico las obras de demolición de forma que no afecte el tránsito vehicular, si aplicare al caso.

29. En cuanto la Condición Especial Número 6 del Permiso para Demolición de Estructuras, el Ing. Medina Eliza testificó que no había que coordinar con el municipio o policía. Manifestó que la condición no aplicaba porque el tránsito de la urbanización era uno limitado, de residentes, subcontratistas y jardineros.

30. El 30 de abril de 2019, no hubo personal dirigiendo el tránsito en la Calle Manuel Rivera Ferrer.

31. Para que los camiones pudieran cargar los escombros tenían que entrar en reversa porque dentro del proyecto no había dónde girar.

32. Mediante correo electrónico, el 5 de abril de 2019, el Sr. Marcelino Bellosta Varady le notificó a la Administración de la Urbanización San Patricio, sobre la demolición de la casa en la Propiedad #20. Además, notificó que estaba en la espera del permiso final para la demolición por parte del Municipio para poder comenzar la obra.

33. El Sr. Marcelino Bellosta Varady le solicitó a la Administración y Junta Directiva de la Urbanización San Patricio que le comunicaran cualquier aclaración o sugerencia relacionada con la obra de demolición.

34. First Pick Trucks and Tires, LLC era la dueña del Camión Kenworth, modelo 999 del año 1994, color blanco, tablilla núm. RP-8005.

35. First Pick Trucks and Tires, LLC fue contratada para transportar, el 30 de abril de 2019, los escombros que fueron producto de la obra de demolición.

36. La parte demandante anunció al Ing. Iván Baigés Valentín, como su perito en materia de negligencia y reconstrucción de accidentes.

37. El 31 de mayo de 2022, el perito de la parte demandante, Ing. Iván Baigés Valentín, presentó un informe pericial, sobre el caso de epígrafe (informe pericial).

38. La prueba pericial de la parte demandante consiste en el testimonio del Ing. Iván Baigés Valentín, quien mediante su informe pericial explicó que su trabajo se enfocó en: 1) evaluar las condiciones prevalecientes al momento del accidente tales como geometría, visibilidad y otras, 2) evaluar las acciones de la señora Josefina Ballester y de los conductores de los camiones, Luis Burgos Echevarría y Juan Méndez Rivera, y 3) determinar cómo las acciones de cada parte y las condiciones del lugar influenciaron en el accidente.

39. El Ing. Iván Baigés Valentín afirmó que su rol como perito del caso fue realizado como experto en reconstrucción de accidentes; no es experto en gerencia de proyectos; no es experto en supervisión e inspección de obras de construcción y no es experto en MOT ("maintenance of traffic").

40. El Ing. Baigés Valentín concluyó que "el dueño del proyecto y todos los contratistas envueltos […] fueron negligentes por no asegurarse de que se implantaran ni se cumplieran medidas de seguridad, incluyendo personal para dirigir el tránsito y a los camiones para así evitar que el camión Kenworth manejado por el señor Luis Burgos Echevarría atropellara mientras daba reversa a la señora Josefina Ballester y así evitar causarle las heridas que le provocaron su muerte".

41. El Ing. Baigés Valentín testificó que los demandados tenían un deber, algunos de exigir y otros de implementar un plan de maniobras para la remoción.

42. En cuanto al Sr. Marcelino Bellosta Varady, el Ing. Baigés Valentín expresó que:

    a. Fue prudente que el dueño, que no tiene experiencia en el campo de construcción, descansara en las compañías de construcción contratadas para llevar a cabo las medidas de seguridad.

    b. Fue prudente y razonable que el Sr. Marcelino Bellosta Varady le comunicara a la

Administración de la Urbanización San Patricio sobre la realización de la obra de demolición.

43. Sobre la obra de demolición, el Ing. Baigés Valentín manifestó lo siguiente:

    a. El accidente ocurrió fuera de la Propiedad #20.
    b. El accidente no ocurrió mientras el camión entraba a la Propiedad #20.
    c. El accidente no ocurrió mientras el camión salía del solar de la Propiedad #20.

44. Según el Informe Pericial, operar camiones como el Camión Kenworth, en una zona residencial, por una vía pública sin aceras es una actividad inherentemente peligrosa y el peligro aumenta cuando se hacen maniobras en reversa, sin tener medidas de control de tránsito.[14]

Entretanto, estableció que existía controversia sobre los siguientes hechos:

1. Las medidas de seguridad que se toman rutinariamente en las obras de demolición y acarreo de escombros, como la realizada en la Propiedad #20.
2. Si los contratistas involucrados en la realización de la obra de demolición y acarreo de escombros emplearon las medidas de seguridad rutinarias.
3. Si, por la naturaleza de la obra o el sitio donde se realizó, la demolición y acarreo de escombros en la Propiedad #20 implicó riesgos peculiares que ameritaban la implementación de medidas de seguridad especiales.
4. Si los riesgos peculiares implicados, si alguno, en la realización de la obra de demolición en la Propiedad #20 fueron previsibles para la parte demandada.
5. Si el Sr. Marcelino Bellosta Varady y los contratistas independientes exigieron, mediante los contratos suscritos, que tomaran las medidas de seguridad necesarias para atender los riesgos especiales implicados, si alguno, en la obra de demolición y el acarreo de escombros.
6. Si el Sr. Marcelino Bellosta Varady y los contratistas independientes codemandados ejercieron diligencia para tomar por sí mismos las medidas de seguridad necesarias para atender los riesgos especiales, si alguno, en la obra de demolición y el acarreo de escombros.
7. Si el Sr. Marcelino Bellosta Varady y los contratistas independientes codemandados ejercieron la debida diligencia para asegurarse que las partes subcontratadas contaban con las destrezas y experiencia suficientes para llevar a cabo la obra de demolición y acarreo de escombros.
8. Si fue previsible para el Sr. Marcelino Bellosta Varady y los contratistas independientes codemandados que las partes subcontratadas no tomarían las medidas de seguridad para evitar daños a terceros.
9. Las funciones ejercidas por Bayside Builders y el Sr. Sebastián Colberg, en el proyecto de demolición y acarreo de escombros.
10. Las funciones que ejerció Alpha Demolitions, Inc. y el Sr. Ángel Ramos, en el proyecto de demolición y acarreo de escombros.

---

[14] (notas al calce omitidas). Íd., págs. 1571-1577. (notas al calce omitidas).

11. Si Sea Shore Environmental o Jesús Ayala Burgos rindió el servicio de remoción y acarreo de escombros en la Propiedad #20.[15]

Además, el foro primario concluyó que el permiso de demolición aprobado para la obra incluyó como condición especial que los proponentes tenían el deber de coordinar con el Municipio de Guaynabo y la Policía de Puerto Rico para que las obras de demolición no afectaran el tránsito vehicular. Sin embargo, señaló que, pese a ello, no surge evidencia de que el dueño de la obra o las partes contratadas hubiesen tramitado coordinación alguna a esos efectos. Por eso, estimó que existía controversia sobre el cumplimiento de esa condición y la responsabilidad adjudicable si en efecto se incumplió, dada la falta de claridad en la estructura de delegación de las tareas y el deber de supervisión.

El 27 de agosto de 2024, los peticionarios radicaron una *Moción de reconsideración y en solicitud de enmiendas a determinaciones de hechos* en la que reiteraron su petición de sentencia sumaria desestimatoria y, en la alternativa, solicitaron que el foro realizara determinaciones de hechos distintas.[16]

Ese mismo día, Bayside presentó una *Moción de reconsideración y solicitud de determinaciones de hechos adicionales* en la que solicitó al TPI que le relevara de toda responsabilidad, arguyendo que no estuvo involucrado en la demolición de la propiedad y acarreo de escombros.[17] En la alternativa, adujo que el foro primario debía incluir los demás hechos esenciales y pertinentes propuestos en su solicitud de sentencia sumaria, pero que no fueron considerados en el dictamen.

El 24 de septiembre de 2024, la parte recurrida radicó una *Oposición a reconsideración* en la que se opuso a la petición de

---

[15] Íd., págs. 1577-1578.
[16] Íd., Anejo VIII, págs. 1590-1608.
[17] Apéndice del KLCE202401181, págs. 3779-3790.

reconsideración de los peticionarios.[18] En ella, planteó que estos no demostraron la inexistencia de las controversias de hechos materiales formuladas por el TPI.

Ese mismo día, presentó otra *Oposición a reconsideración* en la que se opuso a la reconsideración solicitada por Bayside.[19] En esta ocasión, reiteró que tampoco demostró que las controversias señaladas por el foro primario no estuviesen presentes.

El 25 de septiembre de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Resolución* en la que declaró No Ha Lugar la reconsideración solicitada por los peticionarios[20] y otra, en la que rechazó la reconsideración promovida por Bayside[21].

Inconformes, los peticionarios radicaron una *Petición de Certiorari*, en el caso matriz, en la que le imputaron al foro primario la comisión de los siguientes errores:

> Primer error: Erró el TPI al no enmendar las determinaciones de hecho señaladas a pesar de que las propuestas por ALPHA se sostenían en prueba fehaciente sin ser realmente controvertidas, siendo las señaladas interpretaciones erróneas de hechos.
>
> Segundo error: Erró el TPI y abusó de su discreción al no desestimar sumariamente las causas de acción contra ALPHA cuando la aplicación del derecho vigente a las determinaciones de hechos establece que los peticionarios no responden por la negligencia incurrida por el contratista de su contratista independiente.

Es su contención que no procede responsabilizar a los peticionarios por el accidente porque: (1) no es razonable exigirle a Alpha Demolitions ejercer una acción adicional ante una labor que no representaba un peligro o riesgo particular, ni requería precauciones especiales; (2) la parte recurrida no cuenta con evidencia suficiente para establecer una relación causal entre los daños sufridos y la alegada negligencia u omisión imputada a Alpha Demolitions; (3) tampoco puede demostrar que Alpha Demolitions incumplió un

---

[18] Apéndice del KLCE202401149, Anejo IX, págs. 1609-1620.
[19] Apéndice del KLCE202401181, págs. 3826-3836.
[20] Apéndice del KLCE202401149, Anejo X, págs. 1621-1623.
[21] Apéndice del KLCE202401181, págs. 3840-3842.

deber y que ello haya sido la causa próxima del accidente de tránsito; y (4) la prueba demuestra que el accidente se debió a los comportamientos del chofer del vehículo y la señora Ballester Cabrera. Asimismo, aduce que decidir lo contrario significaría sustituir la doctrina de causa adecuada por una teoría de responsabilidad sin causa para todo empleador que contrata una compañía de transportación que, a su vez, designa a un contratista debidamente licenciado para conducir vehículos pesados, por los daños que este último ocasiona.

También en desacuerdo, Bayside presentó una *Petición de Certiorari*, en el caso KLCE202401181, en la que señaló que el foro primario incidió en los siguientes errores:

> PRIMER ERROR: Erró el TPI al no disponer del pleito por la vía sumaria en cuanto a las Peticionarias, al descartar, sin más, los hechos incontrovertidos, según admitidos por la propia Recurrida, que demuestran clara e inequívocamente la inexistencia de una controversia real de hechos materiales.
>
> SEGUNDO ERROR: Abusó de discreción el TPI al no desestimar la *Demanda* en cuanto a las Peticionarias, ya que como estricta cuestión de derecho, del expediente no surge prueba de acto u omisión negligente cometido por Bayside por el cual deba responderle civilmente a la Recurrida.

Según argumenta, la parte recurrida no cuenta con evidencia suficiente para establecer que Bayside actuó fuera de los parámetros de un buen padre de familia. Por el contrario, plantea que la prueba y los hechos incontrovertidos demuestran que no medió acto u omisión negligente alguno de Bayside que haya contribuido u ocasionado el accidente. Es su contención que Bayside no tiene obligación legal alguna porque delegó el proyecto en su totalidad a Alpha Demolitions, la principal responsable de la seguridad del proyecto. Asimismo, esboza que Bayside no estuvo a cargo de la subcontratación de camiones de acarreo y del personal para ello, no condujo el camión, no era dueño de este, y no era patrono del conductor, ni del propietario de este. Por ello, arguye que, como la prueba ofrecida por la parte recurrida no tiende a demostrar lo

contrario, procedía dictar sentencia sumaria desestimatoria a su favor. Además, impugna los hechos incontrovertidos según formulados por el foro primario, pues debían descartarse algunos por basarse en la opinión de un perito cuya cualificación está en controversia y debían incluirse otros porque la parte recurrida no los refutó según fueron propuestos por Bayside.

El 7 de noviembre de 2024, la parte recurrida radicó una *Oposición a la expedición de autos de certiorari consolidados* en la que solicita que deneguemos la expedición de los autos de *Certiorari* solicitados. Es su posición que los hechos en controversia según formulados por el TPI deben sostenerse, independientemente de lo planteado por los peticionarios y Bayside. Igualmente, argumentan que excluir los hechos incontrovertidos como solicitaron no varía ni altera la controversia de hechos sobre la admisibilidad y el valor probatorio de la evidencia pericial propuesta por la parte recurrida. En todo caso, sostiene que las objeciones de esas partes sobre el perito son una admisión de que existen controversias materiales respecto a su testimonio y, además, recalca que cada una tendrá amplia oportunidad de cuestionar las cualificaciones del perito y de presentar su propia prueba pericial, la cual anunciaron. Por último, arguye que la *Resolución* recurrida fue dictada según la jurisprudencia que interpreta que la condición de contratista independiente no releva por sí sola al principal que lo emplea por los daños que haya causado.

En adelante, pormenorizamos el derecho vigente aplicable a la atención de los recursos consolidados de epígrafe.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil***

*Healthcare LLC*, 194 DPR 723, 728 (2016). Véase, además, *IG Builders et al v. BBVAPR*, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[22] establece las instancias en las que le foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. *Mun. Caguas v. JRO Contruction, Inc.*, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del

---

[22] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[23]

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos

---

[23] Esta Regla dispone lo siguiente:
    El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
    (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
    (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
    (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
    (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
    (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
    (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
    (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. **PFZ Props., Inc. v. Gen. Acc. Ins. Co.**, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. **León Torres v. Rivera Lebrón,** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. **Meléndez González et al. v. M. Cuebas**, 193 DPR 100, 138 (2015); **Ramos Pérez v. Univisión**, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. **Meléndez González et al. v. M. Cuebas**, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. **Ramos Pérez v. Univisión**, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión,*** supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3)

cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro

primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

**IV.**

En los recursos consolidados de epígrafe, los peticionarios y Bayside impugnan una *Resolución* en la que el TPI rechazó sus respectivas solicitudes de sentencia sumaria desestimatoria a su favor.

Para los peticionarios, el foro primario erró porque descartó determinaciones de hechos propuestas por Alpha Demolitions y que se sostenían por la prueba sometida. Además, arguyen que la aplicación del derecho a las determinaciones de hechos formuladas

por el foro primario lleva a la conclusión de que los peticionarios no deben responder por la negligencia en la que incurrió un contratista independiente.

Por su parte, para Bayside, el TPI erró al descartar los hechos incontrovertidos propuestos por ellos, admitidos por la parte recurrida, los cuales alegadamente demuestran que no existe controversia real sobre los hechos materiales del caso. Asimismo, arguyen que incidió en error porque del expediente no surge un acto u omisión negligente cometido por Bayside y por el cual deba responderle a la parte recurrida. A su entender, también debían descartarse algunos de los hechos que el TPI consideró incontrovertidos por basarse en la opinión de un perito cuya cualificación estaba en controversia y debían incluirse otros porque la parte recurrida no refutó los que propuso Bayside.

Tras un análisis objetivo, sereno y cuidadoso del voluminoso expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora y rechazar intervenir con la determinación del TPI.

Un examen sosegado del expediente del caso ante nuestra consideración y de la determinación recurrida, la misma no arroja error alguno que amerite nuestra intervención. No surge de los autos que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. La determinación del foro primario fue esencialmente correcta en derecho en cuanto declaró No Ha Lugar las solicitudes de sentencia sumarias promovidas por los peticionarios y Bayside. El foro primario cumplió con la normativa vigente, aplicable a la disposición de mociones de sentencia sumaria, toda vez que basó sus fundamentadas determinaciones de hechos en los argumentos de las partes, en la prueba presentada

por estas y en la documentación disponible en el expediente del caso. Ello es mandatado tanto por las Reglas de Procedimiento Civil, *supra*, como la jurisprudencia.

Además, el TPI formuló palmariamente los hechos en controversia que le impidieron disponer sumariamente del caso, los cuales versan directamente sobre la posible responsabilidad de las partes peticionarias en ambos recursos consolidados. Consecuentemente, no intervendremos con la discreción del foro primario en esta etapa de los procedimientos.

**V.**

Por los fundamentos pormenorizados, se deniega la expedición de los autos de *certiorari* solicitados.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones